UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRIGITTE LAZETTE McGENSY, ) | No. EDCV 09-152 AGR |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND ORDER |
| v. ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| Defendant. ) | |

Plaintiff Brigitte Lazette McGensy ("McGensy")[1] filed a Complaint on February 2, 2009. Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on February 17 and March 9, 2009. (Dkt. Nos. 8-9.) On September 3, 2009, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Commissioner filed the certified administrative record ("AR"). The Court has taken the Joint Stipulation under submission without oral argument.

Having reviewed the entire file, the Court remands this matter to the Commissioner for proceedings consistent with this Opinion.

---

[1] In the Joint Stipulation, the parties spell Plaintiff's name as "McGensey," but throughout the record, it is spelled "McGensy," which she used when applying for benefits. AR 124, 129.

# I.

## PROCEDURAL BACKGROUND

On March 27, 2006, McGensy filed applications for disability insurance benefits and supplemental security income benefits. AR 49, 124-35. The applications were denied initially and upon reconsideration. AR 45-46. McGensy requested a hearing. AR 64. On October 24, 2007, an Administrative Law Judge ("ALJ") conducted a hearing at which McGensy and two medical experts testified. AR 5-21. On December 18, 2007, the ALJ conducted a supplemental hearing at which McGensy, a medical expert (psychiatry) and a vocational expert ("VE") testified. AR 22-44. On March 27, 2008, the ALJ issued a decision denying benefits. AR 47-56. McGensy requested review. AR 122. On November 28, 2008, the Appeals Council denied McGensy's request for review. AR 1-4. This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

# III.

# EVALUATION OF DISABILITY

### A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that McGensy has the following severe combination of impairments: "morbid obesity, asthma, hypertension, history of right rotator cuff injury and repair, and major depressive disorder." AR 51. The ALJ determined that McGensy has, "and never lost for any significant period of time," the residual functional capacity ("RFC") to perform light work except: "balance, stoop, crouch, or climb stairs occasionally, less than occasional kneeling, no significant crawling or climbing of ladders or scaffolds, occasional overhead reaching with the right arm, no significant exposure to extreme heat or extreme cold, concentrated exposure to humidity or wetness, no significant exposure to pulmonary irritants such as dust or fumes or hazards such as unprotected heights and dangerous or fast moving machinery." AR 53. In addition, McGensy "has never lost for any significant period of time the residual functional capacity to perform at least simple, repetitive tasks in a habituated work setting involving only occasional non-intense interaction with supervisors, coworkers, and the general public, no fast paced work, no hypervigilence [sic], no safety operation, and no responsibility for the safety of others." *Id.* The ALJ found that McGensy "is capable of performing past relevant work as a mail clerk." AR 55.

///

///

### C. Past Relevant Work

The Dictionary of Occupational Titles ("DOT") raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

"When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Social Security Ruling ("SSR") 00-4p,[2] 2000 WL 1898704, at *4. The ALJ must ask the VE "if the evidence he or she has provided conflicts with information provided in the DOT" and, if there is a conflict, "obtain a reasonable explanation for any apparent conflict." *Id.*

"[A]n ALJ may [not] rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the *Dictionary of Occupational Titles*." *Massachi v. Astrue*, 486 F.3d 1149, 1152, (9th Cir. 2007) (footnote omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1234 (9th Cir. 2009). SSR 00-4p requires the ALJ to "first determine whether a conflict exists" between the DOT and the vocational expert's testimony, and "then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Massachi*, 486 F.3d at 1153.

In evaluating the VE's explanation for the conflict, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. The ALJ's explanation is satisfactory if the ALJ's factual findings support a deviation from the DOT and "persuasive testimony of available job categories" matches "the specific requirements of

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (citation and footnotes omitted).

4

a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435.

Remand may not be necessary if the procedural error is harmless, *i.e.*, when there is no conflict or if the VE had provided sufficient support for her conclusion so as to justify any potential conflicts. *Massachi*, 486 F.3d at 1154 n.19.

Here, the ALJ found McGensy has the RFC "to perform at least simple, repetitive tasks in a habituated work setting." AR 53. The ALJ incorporated that limitation into the hypothetical question he posed to the VE at the supplemental hearing on December 18, 2007. AR 27, 42. The VE testified that McGensy's past relevant work of mail clerk as she had performed it would be eliminated, but that she was capable of performing the work of mail clerk "as is typically done in the national economy." AR 42.

McGensy argues there is a conflict between the VE's testimony and the DOT. McGensy contends that a limitation to "simple, repetitive tasks" is inconsistent with the requirement that a mail clerk possess a level three reasoning ability as listed in DOT No. 209.687-026.[3] JS at 16-18; DOT No. 209.687-026. The DOT states that the mail clerk job requires reasoning at level three, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *See* DOT No. 209.687-026. Each higher numbered reasoning level is more demanding than the lower level. Level two is described as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C.[4]

---

[3]   The parties agree that the ALJ and VE mistakenly identified the DOT code as "209.587-026." *See* AR 56; JS 19 n.2.

[4]   Level one is the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App. C.

5

Courts have found that a limitation to "simple, repetitive tasks" is consistent with level two reasoning. *See Meissl v. Barnhart*, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005) ("While reasoning level two notes the worker must be able to follow 'detailed' instructions, it also . . . downplayed the rigorousness of those instructions by labeling them as being 'uninvolved.'"); *Vasquez v. Astrue*, 2009 WL 3672519, at *3 (C.D. Cal Oct. 30, 2009) ("the DOT's reasoning development Level two requirement does not conflict with the ALJ's prescribed limitation that Plaintiff could perform only simple, routine work.").

However, level three expands the requirement to follow instructions to those in diagrammatic form as well as oral and written forms and to deal with "several concrete variables." DOT App. C, Sec. III. Some courts have found that level three reasoning is inconsistent with the limitation to "simple, repetitive tasks." *Pak v. Astrue*, 2009 WL 2151361, at *7 (C.D. Cal. 2009) ("The Court finds that the DOT's Reasoning Level three requirement conflicts with the ALJ's prescribed limitation that Plaintiff could perform only simple, repetitive work."); *Tudino v. Barnhart*, 2008 WL 4161443, at *11 (S.D. Cal. 2008) ("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"; remand for ALJ to "address the conflict between Plaintiff's limitation to 'simple repetitive tasks' and the level-three reasoning"); *Squier v. Astrue*, 2008 WL 2537129, at *5 (C.D. Cal. 2008) (reasoning level three is "inconsistent with a limitation to simple repetitive work").

McGensy has made a sufficient showing of a conflict between the VE's testimony and the DOT to require the ALJ to ask the VE whether her testimony conflicted with the DOT and, if so, whether there was a reasonable explanation for any conflict. *Massachi*, 486 F.3d at 1153; *Bray*, 554 F.3d at 1234. The ALJ in this case did not do so. AR 42.

Under these circumstances, the Ninth Circuit has held that "we cannot determine whether the ALJ properly relied on [the VE's] testimony." *Massachi*, 486 F.3d at 1154. Further, "we cannot determine whether substantial evidence supports the ALJ's step-five finding that Massachi could perform other work." *Id.* The remedy, according to the

Ninth Circuit, is "to remand this case so that the ALJ can perform the appropriate inquiries under SSR 00-4p." *Id.*

### D.    Treating Psychiatrist

In her first two grounds for relief, McGensy contends that the ALJ did not properly consider the opinion of two treating psychiatrists, Dr. Purmandla and Dr. Schmid. JS 3-4 (citing AR 52); JS 7-8 (citing AR 55).

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

On the page cited by McGensy, the ALJ found that "the evidence of record shows that the claimant's depression has been treated irregularly with good response to medication and that the medical evidence as a whole does not establish any marked or extreme limitations presently or any period of twelve [] months in the past." AR 52. In so finding, the ALJ relied upon Dr. Purmandla's treating records. "[A] treating psychiatrist then reported in April 2007 that the claimant was unable to perform even simple repetitive tasks on a full time basis, but the claimant reported improvement with Wellbutrin, especially after [she] stopped using Cymbalta, and the reported symptoms and mental status examination findings in May 2007 and later were generally normal

despite depressed mood except when she reported that her SSI claim was being appealed and that she had one or two bad days per week." *Id.*[5]

The ALJ's findings are supported by substantial evidence. In April 2007, Dr. Purmandla diagnosed McGensy with major depressive disorder, recurrent, without psychotic features. AR 352. McGensy's thoughts were clearly organized, she exhibited no psychosis, her memory was mildly impaired, her judgment was mildly impaired, she had decreased energy, and she exhibited affective flattening. *Id.* McGensy could interact appropriately with supervisors and strangers, and was able to manage her own funds. Dr. Purmandla concluded McGensy could not sustain repetitive tasks for an extended period and could not maintain a sustained level of concentration. *Id.* Nor could she complete a 40 hour workweek without decompensating. *Id.*

Subsequently, in May 2007, McGensy's medication efficacy remained "symptomatic but stable." AR 348. Her appearance, attention, concentration, affect, and speech were "appropriate." *Id.* In June 2007, McGensy reported that Wellbutrin "is helping me better than the Cymbalta." AR 346. By July 2007, Dr. Purmandla's assessment of medication efficacy was "stable." AR 351. McGensy reported she had discontinued Cymbalta due to side effects and wanted to stay on Wellbutrin. *Id.* McGensy's appearance, attention, concentration, and speech were "appropriate." *Id.* Contrary to McGensy's argument, the ALJ fairly represented her response to medication and acknowledged that McGensy improved after discontinuing Cymbalta.

In August 2007, Dr. Schmid reported that McGensy's SSI denial was on appeal. Dr. Schmid quotes McGensy as reporting that her concentration was "'still not good'"

---

[5] The ALJ's discussion, to which McGensy objects, occurred in the context of the ALJ's finding that McGensy's mental impairment did not meet or equal a listing at Step Three of the sequential analysis. AR 52. McGensy argues only that the ALJ did not address the treating psychiatrist's limitations. JS 4. McGensy nowhere argues that she meets or equals a listing. The claimant bears the burden of demonstrating that her impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

and that she works on the computer for only ten minutes at a time. AR 343. McGensy reported that she has 3-4 good days and other days feels tired and unmotivated. *Id.* In September 2007, Dr. Schmid filled out a check the box form that said McGensy has a mental incapacity that "prevents or substantially reduces" her ability to work full time at her customary job. AR 341.

McGensy argues that the ALJ did not address the limitations assessed by Dr. Purmandla. JS 4. However, the ALJ found that Dr. Purmandla's conclusions were not supported by the treating records. AR 55.

The ALJ may properly discount a treating physician's opinion that is not supported by treatment records. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas,* 278 F.3d at 957 (ALJ need not accept treating physician's opinion that is inadequately supported by clinical findings). Dr. Purmandla prepared her April 10, 2007 report for social security without the patient's presence. AR 352-53. In that report, Dr. Purmandla found that McGensy could not maintain a sustained level of concentration and could not sustain repetitive tasks for an extended period. In addition, she could not complete a 40 hour workweek without decompensating. AR 352. However, in the immediately preceding progress note on March 29, 2007, Dr. Purmandla noted that McGensy's attention and concentration were "appropriate," not short or impaired. AR 354. McGensy's appearance and speech were "appropriate." *Id.* Dr. Purmandla's assessment of medical efficacy was that McGensy was symptomatic but stable. *Id.* Dr. Purmandla's assessment in the April 10, 2007 report was that McGensy's thoughts were clearly organized, she exhibited no psychosis, her memory was mildly impaired, her judgment was mildly impaired, she had decreased energy, she exhibited affective flattening, and could interact appropriately with supervisors and strangers. AR 352. Moreover, the ALJ cited earlier records that reported McGensy to be alert with good concentration, normal thought processes, average fund of knowledge, normal speech, good eye contact, and responsive interactions. AR 52

(citing AR 317, 335-36). On this record, the ALJ could reasonably conclude that Dr. Purmandla's opinion was not supported by the findings.[6]

McGensy also argues that the ALJ did not properly consider Dr. Schmid's opinion dated September 7, 2007. JS 7-8. The ALJ rejected Dr. Schmid's opinion for two reasons: (1) the report did not explain the basis for its conclusion that McGensy could not perform her customary work; and (2) "to the extent [the opinion] is interpreted to mean the claimant was mentally unable to perform any work, even unskilled work, on a sustained full time basis it is not supported by the treating source findings as noted above with regard to Exhibit 9F."[7] AR 55.

An ALJ may discount a check-the-box report that does not explain the basis of its conclusions. *See Batson v. Commissioner of the Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly rejected treating physician's conclusory check-list report); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ may reject check-off reports that did explain the basis of the conclusions). Dr. Schmid's report does not contain any explanation for its conclusion. AR 341.

In addition, an ALJ may reject a treating physician's opinion that is not supported by treatment records. *Bayliss*, 427 F.3d at 1216. As discussed above, the ALJ noted that McGensy had shown improvement with normal mental status examination findings in April–July 2007 until she reported to Schmid that her SSI denial was being appealed. AR 52; *compare* AR 346, 348, 351 *with* 340, 343. At that point, McGensy, who had previously been found to have appropriate attention and concentration, reported to Dr. Schmid that her concentration was "'still not good'" and she works on her computer for only ten minutes at a time." *Compare* AR 345, 348, 351 *with* AR 343. In September

---

[6] The ALJ noted that the medical expert agreed with his assessment that the underlying clinical findings did not support Dr. Purmandla's conclusion that McGensy could not perform full time work without decompensating or sustain repetitive tasks for extended periods of time. AR 55; *see* AR 29-30.

[7] Exhibit 9F is Dr. Purmandla's opinion.

10

1  2007, McGensy again reported to Dr. Schmid that her concentration was "'not good,'"
2  her energy was "'not good'" and she sleeps a lot during the day. AR 340. The ALJ
3  found that McGensy's "statements concerning the intensity, persistence and limiting
4  effects of these symptoms are not credible to the extent they are inconsistent with the
5  residual functional capacity assessment," a finding that McGensy does not challenge.
6  AR 54. Apart from quoting McGensy, Dr. Schmid assessed that McGensy's medication
7  efficacy was symptomatic but stable. AR 340, 343. Her appearance and speech were
8  appropriate. AR 343.
9       McGensy argues the ALJ pointed out an "ambiguity" in that Dr. Schmid opined
10 McGensy was incapable of performing her customary work as a mail clerk yet also
11 opined McGensy was not impaired in her ability to care for her children. JS 10; AR 55.
12 McGensy contends that the ALJ's finding of an ambiguity means that the ALJ failed to
13 develop the record.
14      "An ALJ's duty to develop the record further is triggered only when there is
15 ambiguous evidence or when the record is inadequate to allow for proper evaluation of
16 the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). McGensy's
17 argument ignores the ALJ's decision and the record as a whole. The term "ambiguity"
18 cannot be read in isolation. The ALJ rejected Dr. Schmid's report as being conclusory
19 without any explanation as to the basis of the conclusions reached. Given that Dr.
20 Schmid "does not explain what limitations the claimant's depression caused" (AR 55),
21 the ALJ found it difficult to reconcile the two conclusory opinions in the check-the-box
22 report. The ALJ noted, however, that the treating records and the medical evidence
23 were inconsistent with Dr. Schmid's report for the reasons already discussed. AR 55.
24 The ALJ did not find that the record was ambiguous or inadequate to allow for proper
25 evaluation of the evidence. Moreover, the ALJ scheduled a supplemental hearing to
26 allow the medical expert to review the complete medical records. AR 20; *Tonapetyan v.*
27 *Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (ALJ satisfies duty to develop record by
28 continuing the hearing or keeping the record open to allow supplementation).

The ALJ did not err.

### E. Side Effects

McGensy argues the ALJ did not consider side effects from medications. JS 12. The ALJ, however, expressly noted that Cymbalta had been discontinued due to side effects. AR 52.

At the supplemental hearing on December 18, 2007, the ALJ asked McGensy whether she experienced side effects from her medications, and McGensy replied "No. I can't say I do." AR 37. Cymbalta was prescribed only for a short time in May-July 2007. AR 321, 323, 325-26. The ALJ did not err. "There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *see also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985) ("[Plaintiff] produced no clinical evidence showing that narcotics use impaired his ability to work").

### F. State Agency Psychiatrist

McGensy argues that the ALJ failed to address the state agency psychiatrist's opinion that she is moderately limited in her ability to understand, remember and carry out detailed instructions. JS 13; AR 286. The state agency psychiatrist opined that McGensy would be able to do simple repetitive tasks. AR 288.

The ALJ's RFC is consistent with the state agency psychiatrist in that he limited McGensy to "simple, repetitive tasks in a habituated work setting involving only occasional non-intense interaction with supervisors, coworkers, and the general public, no fast paced work, no hypervigilence [sic], no safety operation, and no responsibility for the safety of others." AR 53. It follows that the ALJ did not err in failing to address the state agency psychiatrist's opinion.

## IV.

## **CONCLUSION**

IT IS HEREBY ORDERED that the decision of the ALJ is remanded to the Commissioner to perform the *Massachi* analysis at Step Four and, if appropriate, Step Five, consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 11, 2010

　　　　　　　　　　　　　　　　/s/ Alicia G. Rosenberg
　　　　　　　　　　　　　　　　ALICIA G. ROSENBERG
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE